Jasen, J.
Appellants Ray Daniels, Alvin Cooper and Harriet Evans were each convicted, after a jury trial, of criminal possession of a dangerous drug in the third and fourth degrees and of two counts of criminally using drug paraphernalia in the second degree. A codefendant, John Bryant, was acquitted of the same charges. The Appellate Division, one Justice dissenting, affirmed the convictions, without opinion.
On October 22, 1971, at approximately 11:00 a.m., Sergeant Robert Race of the New York City Police went to a six-story apartment building located at 457 Schenectady Avenue, Brooklyn, and placed Ray Daniels’ apartment under surveillance. At approximately 1:30 p.m., John Bryant was seen leaving Daniels’ apartment. Approximately 45 minutes later, Donald James approached the apartment and, after conversing with one of the occupants, entered the apartment. At 3:05 p.m., Daniels and James left the apartment together. Race alerted other police officers to arrest the two men, and, after observing the arrest from a landing, began to approach the apartment. As he neared the apartment, he spotted John Bryant getting off the building’s elevator. Bryant was taken into custody and Daniels and James were returned to the apartment. Appellant Alvin Cooper opened the door to the apartment. In the bedroom, the fourth defendant, Harriet Evans, was lying down in bed, undressed and under the blankets. On the kitchen table, the police found 1331 glassine envelopes, each containing a white powder. The envelopes collectively contained nearly four and one-half ounces of heroin. Two plastic bags, one containing white powder, the other holding gelatin capsules, a scale and three full boxes of cellophane tape were on top of the table. Nearby, there was an additional quantity of empty glassine envelopes and a box of rubber bands. All five suspects were brought into the living room and were arrested.
Donald James pleaded guilty prior to the trial and testified for the People. According to his testimony, Ray Daniels was *628 his partner in the drug trade. They employed Bryant to sell the drugs, Evans to distribute drugs to sellers, and Cooper to handle telephone calls regarding the drugs.
The principal issue on this appeal concerns the statutory requirement that the testimony of an accomplice be corroborated. The appellants argue that the trial court erred in its charge to the jury on the point, and that, in any event, there was insufficient corroborating evidence to support their convictions. We disagree and would affirm the convictions.
Ordinarily, the trier of fact is solely responsible for determining the credibility of witnesses. However, the law looks askance at certain witnesses and, in order to insure fairness to the accused, requires that their testimony be supported by other proof if a conviction is to be had. This corroboration requirement exists to further considerations of public policy, and the amount of corroboration to be required varies with the policy sought to be served by the requirement.
For example, until recently, a defendant could not be convicted of most sexual offenses "solely on the uncorroborated testimony of the alleged victim.” (Penal Law, former § 130.15; L 1972, ch 373.) In this respect, the New York corroboration rule was considered the strictest in the country. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 130.16, pp 456-457; Study, Requirement of Corroborative Evidence for Conviction of Sex Crimes, 1962 Report of NY L Rev Comm, pp 645, 653.) It was necessary to produce additional proof, beyond the testimony of the complainant, that a sexual act had occurred, that the act was criminal in nature, and that the defendant was the person who committed the crime. (Younger, The Requirement of Corroboration in Prosecutions for Sex Offenses in New York, 40 Fordham L Rev 263, 268.) The corroboration had to extend to every material element of the crime. (People v Radunovic, 21 NY2d 186, 190; People v Croes, 285 NY 279, 282.) This requirement, which was the most stringent of all the corroboration requirements, was deemed necessary since charges of sexual misconduct could easily be made and would be difficult to disprove. (People v Friedman, 139 App Div 795, 796; Note, Corroborating Charges of Rape, 67 Col L Rev 1137.) In fact, the rule was so strict that it became nearly impossible to enforce the criminal statutes with respect to sex offenses (Ludwig, The Case for Repeal of the Sex Corroboration Requirement in New York, 36 Brooklyn L Rev 378) and the law *629 was first amended (L 1972, ch 373) and then repealed[1] (L 1974, ch 14, § 1).
At the opposite end of the scale is the requirement that a defendant cannot be convicted solely upon his own confession or admission. It is necessary for the prosecution to come forward with "additional proof that the offense charged has been committed.” (CPL 60.50.) The purpose of this rule is to guard against the possibility that a defendant might be convicted and jailed for a crime that never occurred. (People v Reade, 13 NY2d 42, 45; People v Lytton, 257 NY 310, 314.) However, the policy behind the statute is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone. This additional evidence may be either direct or circumstantial. (People v Cuozzo, 292 NY 85, 92; People v Jaehne, 103 NY 182, 199-200.) The independent evidence need not even connect or tend to connect the defendant with the crime. The confession itself provides the means for understanding the circumstances of the transaction. (People v Jennings, 40 AD2d 357, 362, affd on opn below 33 NY2d 880; People v Sims, 37 NY2d 906.)
The corroboration requirement with respect to the testimony of accomplices occupies a middle ground. The rule is that the required corroborative evidence must tend “to connect the defendant with the commission of [the] offense.” (CPL 60.22, subd 1.) This rule recognizes that accomplices may themselves be persons of disrepute, lacking the normal indicia of reliability. Moreover, as it is with Donald James, the accomplice may have purchased a reduced exposure to criminal liability by promising to implicate others. (People v Kress, 284 NY 452, 458-459; People v Dixon, 231 NY 111, 116.) Thus, the purpose of this aspect of the rule is to be sure that the facts, even matters which in themselves may be of "seeming indifference”, "so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime.” (People v Morhouse, 21 *630 NY2d 66, 74; People v Dixon, supra, at pp 116-117.) It is not necessary to exclude to a moral certainty every hypothesis but that of wrongdoing. (People v Kohut, 30 NY2d 183, 193-194.) All that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth. (People v Malizia, 4 NY2d 22, 27; People v Dixon, supra, at p 116.)
With these considerations in mind,[2] we turn to the issues presented to us on this appeal. Under the applicable rules, Donald James was an accomplice as a matter of law; he was an actual participant in the offense charged (CPL 60.22, subd 2) and his testimony must be corroborated. The trial court charged the jury that if they believed the police testimony that there was contraband on the kitchen table when they entered Daniels’ apartment, then the testimony of the accomplice had been sufficiently corroborated.[3] In light of the evidence presented in this case, this was ample corroboration. The court’s instructions, which the dissenter at the Appellate Division found deficient, must be viewed in light of the entire record. It was Daniels’ apartment in which the contraband was found and he was observed leaving it just prior to his arrest. Cooper and Evans were found inside the apartment. When narcotics are found in open view in a room on private premises, every person "in close proximity” to the drugs at *631 the time of discovery is presumed by statute to have knowingly possessed them. (Penal Law, § 220.25, subd 2.) While this presumption is, of course, rebuttable, the jury is authorized, after hearing all the evidence, to draw from presence of the defendants at the place of discovery the logical inference that they were guilty of criminal possession of narcotics. Since in a proper case the jury could employ the statutory presumption to convict, the presence of these defendants in close proximity to a large supply of drugs surely is sufficient connection with the commission of an offense to corroborate the accomplice testimony. In fact, given the probabilities to be drawn from common experience, in this case, reliance need not be placed solely on the statutory presumption. The presence of the drugs and the defendants in the apartment is a sufficient basis on which the jury could conclude that the accomplice was telling the truth when he testified that each of the defendants was involved in the drug business with him. The policy sought to be furthered by accomplice corroboration requirement was satisfied by this additional proof which shored up the accomplice’s testimony. Thus, we find that the accomplice’s testimony was sufficiently corroborated.[4]
We have considered the defendants’ other contentions and find them to be without merit.
The order of the Appellate Division should be affirmed.

. The elimination of the corroboration requirement in cases of forcible rape and other sexual crimes resulted from a shift in public policy. Female complainants were no longer regarded as "inherently suspect” witnesses and it was felt that defendants already had sufficient safeguards against false accusations. (See Governor’s Memorandum Approving L 1974, ch 14, 1974 Legis Annual, pp 371-372.) Since the policy underlying the rule had changed, the rule itself disappeared. Nevertheless, a lesser corroboration requirement still exists in consensual sodomy cases or where an element of the crime is that the victim was incapable of giving consent due to nonage, mental defect or mental incapacity. (Penal Law, § 130.16.)

. It should be noted that there are several other corroboration requirements in our criminal law, in addition to the ones previously discussed. For example, a defendant may not be convicted solely upon the unsworn testimony of a child less than 12 years of age. (CPL 60.20, subd 3.) In prosecutions for perjury and related offenses, in order to avoid pitting the oath of one witness against that of another, a statute requires that a conviction may not be had upon the uncorroborated testimony of a single witness. (Penal Law, § 210.50.) There are, of course, many other examples, but further discussion is not necessary for our present purposes.

. The court instructed the jury, in pertinent part, as follows: "I charge you now that if you are satisfied beyond a reasonable doubt of Sergeant Race — he was the detective at the time — and then Alongé [another police officer], that when he entered the apartment there on the kitchen table was all this alleged contraband and paraphernalia used to mix the drugs and engaged in an operation to package it for the purpose of selling it — and that was the second count of the indictment, intent to sell — you may consider that as corroborative evidence tending to connect the defendants with the commission of the crime.”
Later on in the charge, the court told the jury: "[I]f you believe James’ testimony that he was part of a group, and Ray Daniels and the other three defendants were part and parcel of this alleged arrangement or whatever you want to call it in making up the drugs — and that he is telling the truth — and if you are satisfied of that, and that testimony is corroborated — and you can take into consideration all of the contraband that was on the table as corroborative evidence — then you may find the defendants guilty.”

. Moreover, the defendants failed to take any exception to the specific portion of the court’s charge relating to corroboration. Thus, the charge point was not even adequately preserved for our review. (CPL 470.05, subd 2.) The question as to the legal sufficiency of the corroborating evidence is properly before us since the defendants made appropriate motions to dismiss the charges at the close of the People’s case.