■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH CHERNAUSKAS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Suffolk County (McInerney, J.), rendered July 26, 1985, convicting him of burglary in the third degree and petit larceny, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Suffolk County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On the evening of January 12, 1984, Edward Wendt, an employee of Port Taxi of Port Jefferson, New York, entered the company's office, allegedly at the behest of the defendant, the manager of a rival taxicab company, and removed therefrom certain "time call sheets", or customer records, which he gave to the defendant. Later that evening, Wendt returned to Port Taxi, ultimately setting fire to the office, which was completely destroyed.

For his role in these events, the defendant was charged with and convicted of burglary in the third degree and petit larceny based upon accessorial liability, which requires that the evidence prove beyond a reasonable doubt that the defendant acted with the mental culpability necessary to commit the crime charged and that, in furtherance thereof, he solicited, requested, commanded, importuned or intentionally aided the principal to commit the crime (Penal Law § 20.00; *People v La Belle*, 18 NY2d 405; *Matter of John G.*, 118 AD2d 646). The mens rea requirement for the commission of a burglary is that the conduct, i.e., the unlawful entry or remaining in the premises not under authority of license or privilege, be knowing (Penal Law § 15.05 [2]; § 140.00 [5]; § 140.20).

We find insufficient evidence in the record to support the conclusion that the defendant's intent to commit burglary was proven beyond a reasonable doubt. The defendant's solicitation of Wendt to provide him with Port Taxi's "time call sheets" undoubtedly arose from his knowledge of and desire to take advantage of the fact that Wendt, in his capacity as an employee, was privileged to enter the premises and had access to these documents on a daily basis. There was no basis for the jury to infer that the defendant possessed the requisite mental culpability to convict him of burglary in the third degree, that is, that he solicited Wendt with the intent that Wendt enter Port Taxi's offices unlawfully for the purpose of obtaining the "time call" slips. In fact, Wendt testified to the contrary, as follows:

"Q You went in to get the time call sheets because Joe wanted them?

"A The way I thought that he was talking to me, the impression I got was that's what he wanted.

"Q He didn't directly tell you to go and get those time call sheets, did he, yes or no?

"A No, sir.

"Q He didn't tell you, 'Eddie, why don't you go over and break into Port Taxi and get those time call sheets for us,' did he?

"A No, sir.

"Q He knew you were the night dispatcher, didn't he?

"A I believe so, Yes, sir * * *

"Q (Interposing) Did he ask you, 'Go into Port Taxi and take the time call sheets,' Yes or no?

"The Court: Are those his words?

"Mr. Wendt: I can't answer that, sir, because he asked for the time calls, he did not come out, straight out and say, ' "Go into the building" ' ".

Moreover, the defendant's convictions of both burglary and petit larceny cannot be sustained inasmuch as they were based solely upon the uncorroborated testimony of Wendt, who was, as the People concede, his accomplice as a matter of law, having been an actual participant in the offenses charged *(see,* CPL 60.22 [2]; *People v Daniels,* 37 NY2d 624, 630).

The statutory prohibition against a conviction "upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission" of the crimes (CPL 60.22 [1]) arises from the suspicion with which the law views an accomplice's testimony, which must be regarded with "the utmost caution" *(People v Berger,* 52 NY2d 214, 219; *see, People v Moses,* 63 NY2d 299, 305). An accomplice's testimony is subject to particular scrutiny where, as here, he has secured a reduced exposure to criminal liability for his cooperation *(People v Daniels, supra,* at 629). The corroboration must consist of "evidence from an independent source of some material fact tending to show that defendant was implicated in the crime" *(People v Kress,* 284 NY 452, 460; *see, People v Daniels, supra).* "It may not depend for its weight and probative value upon the testimony of the accomplice. It need not, alone and by itself, establish that defendant committed the crime. But where the corroborative evidence standing alone has no *real* tendency to connect defendant with the commission of the crime, it is insufficient" *(People v Kress, supra,* at 460).

The trial court's refusal to instruct the jury as to this statutory requirement, which is " 'necessarily harmful error' " *(People v Minarich,* 46 NY2d 970, 971, quoting *People v Jenner,* 29 NY2d 695, 697), deprived the jury of the opportunity to properly evaluate Wendt's testimony.

Our review of the evidence leads to the conclusion that the defendant's statements regarding the events of that night may not be invested with corroborative significance since they merely lent a degree of credibility to his accomplice's testimony *(see, People v Kress,* 284 NY2d 452, 460, *supra).* Moreover, while certain of the defendant's statements may be considered indicative of consciousness of guilt, evidence traditionally viewed as minimally probative *(see, People v Moses,* 63 NY2d 299, 308, *supra; People v Marin,* 102 AD2d 14, 27, *affd* 65 NY2d 741; Richardson, Evidence § 167 [Prince 10th ed]), we find that in the circumstances of this case, this evidence does not satisfy statutory dictates where, essentially, no other nexus between the defendant and the criminal activity may be said to have been established *(see, People v Moses, supra,* at 308-309; *People v Reddy,* 261 NY 479).

Nor does testimony relating to the subsequent arson contribute to or constitute the requisite corroboration. In this regard, we note that the trial court erroneously permitted the People to elicit extensive testimony on this point upon the prosecutor's urging that, with this evidence, he was "trying to corroborate Eddie Wendt's testimony and I have to do that, Judge, otherwise you can dismiss the case". Particularly objectionable was hearsay testimony given by a barmaid who overheard a comment about "torching the place" from a table where, among numerous striking employees of Port Taxi, the defendant and Wendt were seated. The witness was not able to attribute the statement to a particular individual at the table. This evidence was clearly inflammatory and should not have been admitted since it cannot be said that it "tends logically and by reasonable inference to prove the issue upon which it is offered [or] that it [was] offered on an issue material to the prosecution's case" *(People v Ventimiglia,* 52 NY2d 350, 360; *see, People v Santarelli,* 49 NY2d 241, *rearg denied* 49 NY2d 918; *People v Molineux,* 168 NY 264). Bracken, J. P., Rubin, Eiber and Spatt, JJ., concur.