THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH GIOIA et al., Defendants, and EUGENE GARNER, Appellant.

First Department, November 7, 1955.

*Nancy Carley* for appellant.

*Stephen A. Wise* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney,* attorney), for respondent.

*Per Curiam.* Defendant has been convicted of robbery in the first degree for participation in the holdup of Mr. and Mrs. Arthur Murray at their apartment at 820 Park Avenue on December 8, 1953, in which jewels, cash and other personalty were seized by four armed and masked men. Except for the testimony of accomplices in the commission of the crime, no

direct proof was offered of defendant's participation in it. The victims did not identify him; he was not otherwise placed as a participant in it by any other independent proof.

Since conviction could not be had on the testimony of the other participants in the crime who were accomplices unless that testimony were corroborated by such " other evidence " as " tends to connect " him " with the commission " of the crime (Code Crim. Pro., § 399) we examine the record to evaluate such other evidence.

This consists solely of testimony by one police detective of one oral admission attributed to defendant. The detective testified: " I said, ' Look, they said you were in the stick-up, now were you or weren't you? They all claim you were the leader.' He said to me, ' I wasn't the leader, I was up there, but I wasn't the leader.' "

Defendant denied making any such admission.

This statement was admissible in evidence if the jury found it was not made under the influence of fear produced by threats (Code Crim. Pro., § 395). Its effect on a confession of crime is open, however, to different constructions; and it is strongly argued by appellant that " I was up there " does not necessarily mean, or, indeed, mean at all, that defendant admitted participation in the crime.

But when the words are brought into the focus of the context, in which it is seen the detective was talking about the specific crime and place of crime and of defendant's participation in it, the expression " I was up there, but I wasn't the leader " could be regarded by the Judge as admissible prima facie, and could be regarded by the jury as " other evidence " tending to " connect " the defendant with the commission of the crime which is required in support of the testimony of accomplices by section 399.

When the problem is viewed this way it is to be seen that the confession was both technically admissible and technically strong enough to carry the weight of conviction. But when it is seen this way, it is also to be seen that the case required a close evaluation by the jury of the effect of this admission upon corroboration, without which a conviction could not be had.

The attention of the jury to the dual and delicate problem of examining this one-sentence oral admission, and if satisfied with it, examining its effect as corroborative of accomplices' testimony, ought not to have been distracted by considerations of passion or prejudice. The factual and evidentiary problem was

close enough, technical enough, and exacting enough to require the jury to concentrate on it a clear and undiverted attention.

Furthermore, defendant's denial of making the statement attributed to him raised a question of credibility between him and Detective Sheehan, which became the central issue in the case.

In this context we examine the summation of the prosecutor which appellant argues exceeded the bounds of fair comment. The prosecutor said in the course of summation: " You disregard Detective Sheehan's testimony in this case [on the confession attributed to defendant] * * * and that will be an invitation to every hoodlum and every drug addict and every bum in New York * * * to indulge in robberies.''

Objection was interposed by defendant on the ground it was '' highly improper ''. The court did not there embrace the opportunity to keep the summation within reasonable bounds, but merely made a laconic ruling '' Objection overruled '' which could readily be taken by the jury as judicial approval of the impassioned argument pursued by the prosecution.

Counsel for defendant attempted to pursue his objection. He said: '' I think it is so improper '' and the court cut him off with the direction: '' Well, now, please take your ruling.''

A moment later in the summation the prosecutor continued: '' Are you going to disregard Detective Sheehan's testimony and accept the testimony of a convicted armed robber? Are you going to disregard the testimony * * * because these assailants and perpetrators wore masks? That would be an invitation to every hoodlum in New York ''. Again there was objection to which the court said '' Objection overruled.''

We think this prejudicial plea was unwarranted and ought to have been redressed unmistakably and fully by the Judge. His vague comment following these objections that '' we are only trying this defendant '' did not give the jury the kind of guidance it was entitled to have from the bench.

We would have no hesitation in affirming this judgment on the merits were we satisfied that defendant had a fair trial; but we think he was prejudiced in substantial respects by the tone and level of the summation of the prosecutor; and the error reaches an importance which we ought not disregard because we may feel that on the whole case the guilt of defendant has been sufficiently established.

He is not only entitled to have a case technically sufficient against him before he is to be punished for the crime charged; he is entitled also to a fair trial of that technically sufficient case.

The judgment of conviction should be reversed and a new trial ordered.

PECK, P. J., BREITEL, BASTOW, COX and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered.