THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RONALD JEFF WASSERMAN, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered March 22, 1972, convicting him of criminal possession of a dangerous drug in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and indictment dismissed as to this appellant. Defendant and one Lewis Colten were indicted for the crime of criminal possession of a dangerous drug in the third degree in violation of former section 220.20 of the Penal Law. At defendant's trial, the People's primary witness was Colten, the courier who had brought the marijuana from Kentucky to New York by airplane. Colten, who admitted to a prior marijuana-related conviction, testified that instructions for delivery of the marijuana had been given to him by two persons in Kentucky, where he, Colten, attended college. He was allowed to state, over objection, that these persons had told him that defendant would be present at La Guardia Airport in New York City to receive the marijuana. He had never met defendant, but he was told that defendant would tell him that he knew a mutual friend, one John Kostick. According to Colten, defendant met him as he came off the plane and in subsequent conversation asked whether Colten had encountered any problems in bringing the marijuana with him. This testimony is the only evidence given by Colten which connects defendant with the crime. Defendant had been driven to the airport by Kostick and, according to Colten, Kostick was in the airport building itself for a short time. It is apparent, however, that Kostick was not present during any of the material events which took place on the day in question. That Kostick was involved in the initial scheme to transport the marijuana was testified to by Colten. Also present at the airport was defendant's girlfriend, who had accompanied defendant and Kostick. When Colten went to claim his baggage, the two pieces of luggage with the marijuana in them were not at the baggage arrival station. Colten put in a claim for lost baggage and then, because he had to go elsewhere to ensure connections for his return trip to Kentucky, left the baggage stubs with defendant's girlfriend, a person who has in no way been implicated in the crime. The baggage was located by airline personnel. In checking Colten's description of the contents as being books and papers, one of the baggage service agents noted a torn green bag in one of the pieces of luggage. The airline police were summoned. After the police ascertained that the baggage probably contained marijuana, they closed the baggage and brought it out to where Colten, defendant, and defendant's girlfriend were waiting. When Colten identified the luggage as his, and after further discussion in which Colten reaffirmed his previous statement that the contents of the luggage were books and papers, the police told him to take the luggage. Colten then took one piece, and defendant the other. They were then immediately placed under arrest. All of the prosecution wit-

nesses who were present stated that no one but Colten had claimed ownership of the luggage and that defendant's participation had been merely to ask why, if the baggage was in fact Colten's, it was not given to him. Defendant and his girlfriend both testified that he went to the airport with Kostick at the latter's request when he said he was meeting a friend there. Since the court charged the jury, as is conceded, that Colten was an accomplice as a matter of law, his testimony could not support a conviction without sufficient corroboration (Code Crim. Pro., § 399). The People rely upon defendant's presence at the airport and, more particularly, in the baggage area, to supply the necessary corroboration. The People would also find corroboration in defendant's concern over the lost baggage and his interest in having it returned. However, reliance upon these facts to constitute the requisite corroboration is misplaced. The required corroboration of accomplice testimony may be direct or circumstantial (*People* v. *Mullens,* 292 N. Y. 408; *People* v. *Brown,* 30 A D 2d 279) and is sufficient "if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (*People* v. *Dixon,* 231 N. Y. 111, 116). However, the corroborative evidence must do more than just show that the crime was committed; it must also tend to show that the defendant was implicated in its commission (*People* v. *Nitzberg,* 287 N. Y. 183, 191–192). The purported corroborative testimony is insufficient if it merely tends to establish the credibility of the accomplice, since the statute (Code Crim. Pro., § 339) does not permit a conviction solely on the testimony of the accomplice just because his testimony appears to be credible. The corroborative evidence, to be legally effective, must come from an independent showing of some material fact tending to connect the defendant with the crime (*People* v. *Hooghkerk,* 96 N. Y. 149, 162; *People* v. *Everhardt,* 104 N. Y. 591; *People* v. *Taleisnik,* 225 N. Y. 489; *People* v. *Reddy,* 261 N. Y. 479; *People* v. *Ogle,* 104 N. Y. 511; *People* v. *O'Farrell,* 175 N. Y. 323). Although it need not, in and of itself, establish that the defendant committed the crime, its value as corroborative evidence may not depend for its weight and probative value upon the accomplice testimony. If the corroborative evidence, standing alone, has no real tendency to connect the defendant with the commission of the crime, it is insufficient (*People* v. *Reddy, supra*; *People* v. *Crum,* 272 N. Y. 348; *People* v. *O'Farrell, supra*). Presence is relevant on the issue of corroboration where the crime proceeds in an open manner so that the fact of criminality must be known to all present, or where the defendant denies his presence and the denial is proved false (*People* v. *Deitsch,* 237 N. Y. 300). Association with an actor in the crime is relevant only if it may reasonably give rise to an inference that the defendant was also a participant. Inferences flowing from presence or association must rest upon probability. Therefore, no such inference may be reasonably drawn in this case, since the probabilities based on experience and proof do not justify it. Certainly, defendant's presence at the airport, and his actions thereat, no more point to knowledge of the presence of the marijuana than they point to a multitude of innocent explanations, including the one offered by the defense. All of defendant's actions at the airport would have had absolutely no relevance to the question of possession of the marijuana if it were not for the accomplice testimony. There is not one material particular of the accomplice's story which is corroborated by the other evidence. Defendant's presence at the airport, his concern about Colten recovering his baggage, and his extending of a helping hand in taking the luggage are acts traditionally associated with good manners. To find in these acts sufficient knowledge to sustain a conviction for possession is to

reverse the rule requiring corrobration. All these activities tend to connect defendant with the crime only if the inferences drawn therefrom depend for their weight and probative value on the accomplice testimony. At best, the evidence tends to support Colten's credibility, but it does not reasonably tend to connect defendant with the commission of the crime. Thus, there was no corroborative evidence, as a matter of law, and the case should not have been submitted to the jury. We would also reverse on a second ground. Over objection, counsel for the prosecution ascertained that bail money for defendant had been posted by his girlfriend. Then, in summation, again over objection, the prosecutor alluded to the bail money, *suggesting that it was really the money from which Colten was to be paid for his service as courier,* and then added, "Maybe that's one of the reasons Lewis Colten got angry here because he did what he was supposed to do for the money he needed, and this defendant turns about and skunks him." There was no basis in the testimony for the comment made by the prosecutor. In fact, even Colten's testimony showed that no payment was expected from defendant. The prosecutor's remarks were gratuitous and based upon his personal opinion, an opinion unsupported by the record. *By indicating to the jury that defendant had failed to pay off Colten, the Assistant District Attorney was suggesting that there was more here than could be brought out.* Phrased in another way, he was asking the jury to accept his word for facts not in evidence. The practice of a prosecutor making himself an unsworn witness in order to support his case through his own veracity and position has been consistently condemned (*People* v. *Lovello,* 1 N Y 2d 436; *People* v. *Morris,* 42 A D 2d 968; *People* v. *Williams,* 40 A D 2d 1023; *People* v. *Wilson,* 40 A D 2d 839). Yet we find that some prosecutors continue this practice unabated, with alarming and disheartening frequency. Were we not reversing and dismissing the indictment, we would reduce the sentence on the ground of excessiveness. Shapiro, Acting P. J., Cohalan, Christ and Brennan, JJ., concur; Benjamin, J., dissents and votes to affirm the judgment, with the following memorandum: Defendant was apprehended while in possession of a valise which contained contraband. The accomplice, Colten, gave testimony which connected defendant with the crime. The issue is whether Colten's testimony had to be corroborated. I think not. Defendant's possession was itself sufficient to make out a prima facie case; the inferences which the jury was free to draw therefrom were not, in its opinion, overcome by defendant's testimony. Accordingly, the judgment must stand. The possession also tended to connect defendant with the crime and thereby furnished the corroboration which the majority holds was lacking (*People* v. *Reisman,* 29 N Y 2d 278, cert. den. 405 U. S. 1041).