■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH SMITH, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered March 9, 1976, convicting him of murder in the second degree (felony murder), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, indictment dismissed, and case remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. Appellant Joseph Smith

and one Frankie Johnson were jointly indicted for the intentional murder and the felony murder of Robert Presburry, who was shot on a Brooklyn street at about 1:30 in the morning on March 29, 1975. Johnson, who had previously been convicted of armed robbery, agreed to testify against the appellant if he were permitted to plead guilty to manslaughter in the first degree in full satisfaction of the indictment. According to his version of the events, he, appellant and appellant's cousin, Kenny Bonapart, planned to rob someone. When the designated victim, Robert Presburry, passed the three men on the street, Smith shot him in the back. Johnson and Bonapart took Presburry's money and a razor he had been carrying. Smith fled immediately after the shooting, although he returned shortly thereafter. Appellant denied having been with Johnson and Bonapart on the night in question. He claimed to have been in his apartment when be became aware of a commotion in the street outside his window. A crowd had gathered, so he went downstairs to investigate, and at that time learned of the shooting. Two witnesses to the events occurring immediately after Presburry was shot testified at the trial. James Broderick and Lorraine Adams, friends of appellant, were standing about one block away from where Presburry fell, when they heard what sounded like a gunshot. Although Broderick saw four or five men gather around the body shortly thereafter, he did not recognize any of them. To his recollection, he saw appellant, Johnson and Bonaparte for the first time that night among the crowd which formed at the scene of the shooting. He did not see any weapon. Ms Adams testified that when she turned in the direction of what sounded like a gunshot, she saw two men standing over a body lying on the ground. A third man was walking away, but he returned later. As she approached the body, before the crowd had the opportunity to gather, she saw the same three men and recognized them to be the appellant, Johnson and Bonapart. However, on redirect examination she recalled seeing only two men near the body, and did not see appellant until after the crowd had gathered. Inasmuch as there is no question that Johnson is an accomplice as a matter of law, as the trial court instructed the jury, it is necessary that his testimony be corroborated (see CPL 60.22). The People rely upon Adams' testimony placing the appellant at the scene as supplying the necessary corroboration. Corroboration evidence is sufficient if it "tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" *(People v Dixon,* 231 NY 111, 116). The corroborative evidence "must be evidence from an independent source of some material fact tending to show * * * that defendant was implicated in [the crime]" *(People v Hooghkerk,* 96 NY 149, 162; *People v Kress,* 284 NY 452, 460). In addition, "The *independent* evidence must be material evidence *other* than that of the accomplice and must fairly and reasonably *tend to connect the defendant with the commission of the crime (People v. Everhardt,* 104 N. Y. 591, 594; *People v. Taleisnik,* 225 N. Y. 489, 493; *People v. Reddy* [261 NY 479], *supra; People v Ogle,* 104 N. Y. 511, 515; *People v. O'Farrell,* 175 N. Y. 323). It may not depend for its weight and probative value upon the testimony of the accomplice. It need not, alone and by itself, establish that defendant committed the crime. But where the corroborative evidence standing alone has no *real* tendency to connect defendant with the commission of the crime, it is insufficient *(People v. Reddy, supra,* p. 586; *People v. Crum* [272 NY 348, 353], *supra; People v. O'Farrell, supra)" (People v Kress, supra,* p 460). Presence is relevant on the issue of corroboration where, for example, a defendant denies his presence and the denial is proved false *(People v Wasserman,* 46 AD2d 915, 916, relying on *People v Deitsch,* 237

NY 300). Presence is relevant only if it may reasonably give rise to an inference that the defendant was also a participant in the crime (see *People v Wasserman, supra*). Adams' testimony simply does not prove a "material fact tending to show that defendant was implicated in the crime" (see *People v Kress*, 284 NY 452, 460, *supra*). When she first heard what was likely the fatal shot, she turned but did not recognize any of the three men she saw, i.e., two men near the body and a third man walking away. The first time she identified the appellant with Johnson and another person being at the scene was when the crowd had already gathered. On the basis of Adams' testimony it is equally plausible to infer that the appellant, as others in the crowd, arrived at the scene after the victim was shot, as it is to infer that he fired the shot or was otherwise implicated in the crime. On that state of the record, the proof is insufficient to corroborate the accomplice testimony (see, e.g., *People v Wasserman*, 46 AD2d 915, *supra*; *People v Bartulis*, 271 App Div 892). In light of our decision, we do not reach the other issues raised. Titone, J. P., Gibbons, Gulotta and Martuscello, JJ., concur.