■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR BRELAND, Appellant. [594 NYS2d 789] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Aiello, J.), rendered July 11, 1990, convicting him of enterprise corruption, murder in the second degree (six counts), attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree (four counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The indictment charged that in 1987 and 1988, the defen-

dant was a member of a criminal enterprise engaged in the purchase, preparation, packaging, and sale of crack cocaine at various retail locations in the East New York, Brownsville, and Bedford-Stuyvesant sections of Brooklyn. Violence was routinely used against rival drug enterprises, against the organization's own employees (e.g., for stealing drugs or money from the business), and against innocent bystanders who found themselves in the wrong place at the wrong time. Among the shootings with which the defendant was charged were: the murders on March 31, 1988, of Shirley Bibbs and James Hamilton, Sr., inside a beauty parlor called Glamorama, which was allegedly owned by rival drug dealer, James Hamilton, Jr., and the subsequent shooting outside Glamorama of his own accomplice, Willie Ashton, and the murder on April 6, 1988 of Joseph Lovell, in whose name the criminal enterprise registered some of its cars, including two of the cars used in the Glamorama slayings, which the defendant feared would be traced to Lovell, whom he did not trust.

The defendant's participation in the Glamorama massacre was adequately corroborated by nonaccomplice testimony "tending to connect" the defendant with the murders of Bibbs and Hamilton. The trial court correctly ruled that erstwhile collaborator Willie Ashton was *not* an accomplice in his own shooting outside Glamorama, with the result that Ashton's testimony regarding his own attempted murder was sufficient to corroborate the accomplice testimony of Gladden and Easterling that the defendant had only moments before used the same weapon *inside* the beauty parlor to kill Bibbs and Hamilton *(see, People v Moses,* 63 NY2d 299; *People v Hudson,* 51 NY2d 233; *People v Deitsch,* 237 NY 300; *cf., People v Wasserman,* 46 AD2d 915).

Similarly, Ashton's testimony about his own shooting was nonaccomplice testimony which corroborated various accomplice accounts that the defendant murdered Joseph Lovell, in whose name several of the mob's cars were registered, and who was suspected of being unable to withstand questioning by the police *(cf., People v Pons,* 159 AD2d 471, *lv denied* 76 NY2d 741; *People v Goldfeld,* 60 AD2d 1; *People v Chamberlain,* 38 AD2d 306). Thus, Ashton's account of the assault on himself "tended to connect" the defendant to the Lovell slaying, by corroborating the accomplice testimony of Gladden and Patterson that the defendant confessed to the similar shooting of Ashton, whom he also feared might identify him to the police. In addition, Gladden quoted the defendant as telling him that he had taken Lovell into Betsy Head Park

and shot him twice in the head and once in the chest. This account of the location of the body, and the number and location of its wounds, was corroborated in detail by testimony from police and medical witnesses.

We further find that the People met their burden of showing at a mid-trial hearing that Ashton knew the defendant so well as to be impervious to police suggestion. Among other things, Ashton was able to describe the defendant, who had absented himself from the hearing, in detail, and he knew the defendant's name and address. Accordingly, the trial court correctly determined after the hearing that Ashton's pretrial viewing of a photo of the defendant had been merely confirmatory, so that no CPL 710.30 notice was required (see, People v Rodriguez, 79 NY2d 445, 452; People v Williamson, 79 NY2d 799).

The defendant's sentence was not excessive (see, People v Suitte, 90 AD2d 80).

We have examined the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit. Bracken, J. P., Balletta, O'Brien and Ritter, JJ., concur.